IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>DONALD LEE FEREBE. | Criminal Case No. CCB-96-0401 |

## MEMORANDUM

Now pending before the court is Donald Lee Ferebe's motion for compassionate release. Ferebe is currently serving a sentence of life imprisonment for crimes he committed as a teenager. Given intervening developments in judicial discretion in sentencing, the role of youth in criminal punishment, and sentencing practices in this District, Ferebe's sentence is dramatically out of step with the sentence he would face were he sentenced today. Accordingly, the court will grant the motion for compassionate release and modify Ferebe's sentence to a total term of thirty-five years.

## BACKGROUND

On October 24, 1996, Ferebe was indicted on one count of committing a violent crime in furtherance of racketeering activity under 18 U.S.C. § 1959(a)(1) and one count of use of a firearm in the commission of a violent crime under 18 U.S.C. § 924(c). *See* Indictment, ECF 1; *United States v. Ferebe*, 194 F.3d 1306 (Table), 1999 WL 753993 at *1 (4th Cir. 1999). After a jury trial, Ferebe was convicted on both counts. *See Ferebe*, 1999 WL 753993 at *1.

Ferebe's convictions stem from his role leading an East Baltimore drug operation. *See id.* On July 18, 1994, Ferebe and one of his lieutenants, Benjamin Page, fronted cocaine to a lower-level dealer, Richard "Skip" Thomas, Jr. *See id.*[1] After collecting the drugs from Ferebe, Thomas

---

[1] Although the physical and electronic preservation of the trial record in this case is incomplete, the parties substantially agree on the factual background, so the court relies on the overlap in their

1

encountered another dealer to whom he was indebted, Eric "Erke" Cunion. *See id*. Cunion demanded repayment, threatening to "take it out on the house" if Thomas didn't turn over his money. *Id.* Thomas fled.

As Thomas ran, Cunion gave chase. Seeking shelter, Thomas led his pursuer to one of Ferebe's key stash houses. Far from finding backup waiting, however, Thomas came face-to-face with an enraged Ferebe, who was incensed that Thomas had revealed the stash house to Cunion and jeopardized the advance Ferebe had given him only that day. An altercation ensued, and Thomas took flight once again, exiting the house into an alley. Ferebe caught Thomas in the alley and shot him three times, killing him. State law enforcement conducted an investigation, and Ferebe was ultimately charged with murder in the Circuit Court for Baltimore City.

The principal witness in Ferebe's state murder trial was his associate, Benjamin Page, with whom he had consigned drugs to Thomas on the day of Thomas's death. As his trial date approached, Ferebe became increasingly eager to prevent Page's testimony. After considering various methods of securing Page's cooperation, Ferebe ultimately enlisted another member of the drug conspiracy, William Thorne, to murder Page and ensure his silence. Thorne then recruited Haywood Carmichael to help execute the attack and Shawnta Graham to be the driver. On August 15, 1995, Thorne and Carmichael killed Page, shooting him fourteen times on a public street in East Baltimore. The incident also caught two bystanders—Yolanda Evans and Charon Peterson—in its crosshairs, killing Evans and injuring Peterson.

As a result of Page's death, Ferebe succeeded in having his state murder charges dismissed. He was ultimately charged for his actions in federal court, however, where he was convicted on

---

briefing, which is consistent with the presentence report, to add detail to the prior opinion of the Fourth Circuit.

one count of committing a violent crime in furtherance of racketeering activity and one count of using a firearm in the commission of a violent crime. Applying a mandatory sentencing guideline, Judge Black sentenced Ferebe to life in prison without the possibility of parole.[2]

After serving over two decades of his sentence—more than half his life—Ferebe filed a pro se motion for compassionate release on November 12, 2021. *See* Mot. for Compassionate Release, ECF 118. On March 1, 2023, he filed a supplement to the original motion, this time through counsel. Suppl. Mot. for Compassionate Release, ECF 124. The Government filed a sealed response opposing the motion, *see* ECF 130, and Ferebe's counsel filed a brief reply in support, *see* ECF 131.[3] Ferebe's motion is now ripe for review, and no hearing is necessary to resolve it. *See* Local Rule 105.6.

## ANALYSIS

Ferebe asks the court to modify his sentence under 18 U.S.C. § 3582(c)(1)(A), commonly known as the "compassionate release" statute. The compassionate release statute permits a court to reduce an incarcerated person's sentence in "extraordinary and compelling" circumstances if a reduction is consistent with the factors set forth in 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A). Fourth Circuit law permits a district court to "consider *any* extraordinary and compelling reason for release that a defendant might raise." *See United States v. McCoy*, 981 F.3d 271, 284-86 (4th Cir. 2020) (quoting *United States v. Zullo*, 976 F.3d 228, 230 (2d Cir. 2020)).

---

[2] Although the court applied an obstruction of justice enhancement to Ferebe's Guideline sentence for his role in the Page murder, the Government ultimately dismissed the charges brought against Ferebe in the separate case concerning Page's death. *See* Order, *United States v. Ferebe*, CCB-97-0329 (D. Md. Sept. 23, 2005), ECF 158. It maintained its prosecution of Haywood Carmichael in that case, however, and he was ultimately convicted and sentenced to life in prison for murdering Page at Ferebe's behest. *See* Judgment, *United States v. Ferebe*, CCB-97-0329 (D. Md. March 10, 1999), ECF 68.

[3] The Government's motion to seal its opposition, ECF 129, will be granted.

3

Accordingly, the court may grant a motion for compassionate release if (1) extraordinary and compelling circumstances warrant a sentence reduction and (2) such a reduction is consistent with the § 3553(a) factors.[4]

**I. Extraordinary and Compelling Reasons Warranting Relief**

A petitioner's sentence presents an extraordinary and compelling basis for relief if they would "likely receive a dramatically lower sentence than the one [they are] currently serving" were they sentenced today. *United States v. Elzey*, JKB-09-0288, 2022 WL 316717, at *2 (D. Md. Feb. 2, 2022) (quoting *United States v. Decator*, 452 F. Supp. 3d 320, 324 (D. Md. 2020), *aff'd sub nom. McCoy*, 981 F.3d 271)[5]; *see McCoy*, 981 F.3d at 286. As the court explains below, three developments in the years since Ferebe was sentenced convince it that, were Ferebe sentenced today, he would receive a sentence in the thirty-year range—a "gross disparity" from the sentence the court imposed and an extraordinary and compelling circumstance that warrants relief. *See McCoy*, 981 F.3d at 285 (quoting *United States v. Redd*, 444 F. Supp. 3d 717, 723 (E.D. Va. 2020)).

First, the court would no longer be required to impose a mandatory sentence of life imprisonment. At the time of Ferebe's original sentencing in 1997, the U.S. Sentencing Guidelines required imposing a term of life imprisonment. Eight years later, however, the U.S. Supreme Court held in *United States v. Booker*, 543 U.S. 220 (2005) that the U.S. Sentencing Guidelines provide advisory—not mandatory—sentencing ranges for a court to consider as one factor in imposing a criminal sentence. So were Ferebe sentenced today, the court would have newfound discretion to impose an appropriate sentence under the factors enumerated in § 3553(a) notwithstanding the Guideline range.

---

[4] The Government does not dispute that Ferebe's motion is properly before the court.
[5] Unpublished opinions are cited for the persuasiveness of their reasoning only, not for precedential value.

Second, in the years since Ferebe was sentenced, the U.S. Supreme Court has placed increased importance on the role of youth in sentencing.[6] As the Supreme Court has since explained, "developments in psychology and brain science" have revealed the need to place children and adults in "constitutionally different" categories "for purposes of sentencing" because of the "diminished culpability" and increased "prospects for reform" during the stages of adolescent psychological development. *See Miller v. Alabama*, 567 U.S. 460, 471-72 (2012) (quoting *Graham v. Florida*, 560 U.S. 48, 68 (2010)). Although these constitutional decisions draw "the line at 18 years of age," the Court has also recognized that the "qualities that distinguish juveniles from adults do not disappear when an individual turns 18." *Roper v. Simmons*, 543 U.S. 551, 574 (2005). Adapting to this understanding, courts now "consistently reject life sentences for those who commit crimes, even heinous crimes, in the 'immaturity, irresponsibility, impetuousness, and recklessness' of youth," including in the years after a defendant turns eighteen. *See* Mem. and Order at 8, *United States v. Linton*, JKB-98-0258 (D. Md. Sept. 27, 2021), ECF 471 (quoting *Miller*, 567 U.S. at 476).

Third, modern sentencing courts in this District "routinely impose sentences within the thirty-year range" for youthful defendants "involved in drug-related killings." *See United States v. Williams*, CCB-07-0402, 2021 WL 3725435, at *3 (D. Md. Aug. 23, 2021) (collecting cases). Sentencing data show that the median sentence for murder in this District is 300 months,[7] and

---

[6] *See Roper v. Simmons*, 543 U.S. 551 (2005); *Graham v. Florida*, 560 U.S. 48 (2010); *Miller v. Alabama*, 567 U.S. 460 (2012); *Montgomery v. Louisiana*, 577 U.S. 190 (2016); *Jones v. Mississippi*, 141 S. Ct. 1307 (2021). Ferebe was sentenced in 1997 before the first of these decisions was issued.

[7] *See Interactive Data Analyzer*, U.S. Sentencing Comm'n, https://ida.ussc.gov/analytics/saw.dll?Dashboard. At the circuit and national level, the average is even lower: The median sentence for murder is 284 months in the Fourth Circuit and 231 months nationwide. *See Statistical Information Packet, Fiscal Year 2021, Fourth Circuit* 11, U.S.

experience confirms that cases like Ferebe's follow this trend. For example, in *United States v. Floyd*, this court sentenced to 360 months a defendant who was convicted of conspiring to commit murder in furtherance of a racketeering conspiracy. *See United States v. Barronette*, 46 F.4th 177, 189, 204 (4th Cir. 2022). Similarly, in *United States v. Hunter*, Chief Judge Bredar sentenced to 321 months a defendant who admitted to distributing a mandatory-minimum quantity of drugs and to shooting and killing a rival gang member in a retaliatory strike. *See* Judgment, *United States v. Hunter*, JKB-16-0363 (D. Md. June 15, 2018), ECF 706; Plea Agreement at 4, *United States v. Hunter*, JKB-16-0363 (D. Md. Oct. 3, 2017), ECF 288. Likewise, in *United States v. Weaver*, Judge Bennett sentenced to 360 months a defendant who pled guilty to the execution-style murder of another drug dealer. *See* Sentencing Tr. 49:14-50:2, 52:16-20, *United States v. Weaver*, RDB-19-0144 (D. Md. Aug. 15, 2022), ECF 214.[8]

Sentencing Ferebe in the thirty-year-range would remain consistent with this precedent even as he continues to face a Guideline sentence of life imprisonment today. Indeed, the Guideline ranges for the defendants sentenced in *Floyd*, *Hunter*, and *Weaver* each contemplated life imprisonment.[9] The defendant in *Floyd* faced, like Ferebe, a Guideline sentence of life, and, like Ferebe, exercised his right to take his case to trial. *See Barronette*, 46 F.4th at 187, 211. Yet after taking all the relevant factors into account, the court imposed a thirty-year sentence

---

Sentencing Comm'n (2022), available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/state-district-circuit/2021/4c21.pdf.

[8] This court has followed these examples in the context of post-conviction relief as well. For instance, in *United States v. Gray* this court granted a motion for compassionate release and resentenced to the equivalent of thirty-one years a defendant who was convicted of murder in aid of racketeering. *See United States v. Gray*, CCB-95-0364, 2021 WL 1856649, at *1, *6 (D. Md. May 10, 2021).

[9] *See Barronette*, 46 F.4th at 211; Plea Agreement at 2, *United States v. Hunter*, JKB-16-0363 (D. Md. Oct. 3, 2017), ECF 288; Sentencing Tr. 21:2-10, *United States v. Weaver*, RDB-19-0144 (D. Md. Aug. 15, 2022), ECF 214.

6

...

notwithstanding the Guideline calculation. *See id.* at 211. On top of this, Ferebe was convicted for crimes committed at a younger age and with a lower criminal history category than any of these similarly situated defendants.

For all these reasons, the court concludes that, were Ferebe convicted today, he would likely receive a sentence "within the thirty-year range." *See Williams*, 2021 WL 3725435, at *3.

A thirty-year-range sentence represents a "gross disparity" with the life term Ferebe is currently serving. *McCoy*, 981 F.3d at 285 (quoting *Redd*, 444 F. Supp. 3d at 723). As Chief Judge Bredar has explained, a "mandatory life sentence, however imposed, constitutes a significant sentencing disparity when considering how the modern criminal justice process" operates on defendants like Ferebe. *See* Mem. and Order at 8, *United States v. Linton*, JKB-98-0258 (D. Md. Sept. 27, 2021), ECF 471. Accordingly, the disparity between Ferebe's sentence and the sentence he would face today, understood in the context of his particular circumstances and intervening legal developments, creates an extraordinary and compelling circumstance that may warrant a reduced sentence.

**II. Section 3553(a) Factors**

Under the compassionate release statute, the court must consider the factors set forth in 18 U.S.C. § 3553(a) "to the extent they are applicable" before reducing a defendant's sentence for "extraordinary and compelling reasons." 18 U.S.C. § 3582(c)(1)(A). The factors the court considers include: (1) "the nature and circumstances of the offense"; (2) "the history and characteristics of the defendant"; (3) the need for a sentence to provide just punishment, promote respect for the law, reflect the seriousness of the offense, deter crime, protect the public, and provide rehabilitative services; (4) the Guideline sentence; and (5) the need to avoid unwarranted sentencing disparities among similarly situated defendants. *See* 18 U.S.C. § 3553(a). Ultimately,

the court concludes that a sentence of thirty-five years is "sufficient, but not greater than necessary, to comply with the purposes" of incarceration. *See* 18 U.S.C. § 3553(a).

Starting with the severity of the offense, the gravity of Ferebe's crimes cannot be overstated. Ferebe was a leader in a conspiracy to distribute dangerous and illegal drugs, and ultimately carried out deadly violence to advance its interests. His actions inflicted immeasurable harm upon the community, and undeniably "rank among the most serious offenses imaginable." *See* Mem. and Order at 10, *United States v. Linton*, JKB-98-0258 (D. Md. Sept. 27, 2021), ECF 471. A sentence of corresponding severity is unquestionably warranted.

At the same time, however, Ferebe's personal characteristics counsel restraint. Ferebe committed the crime of conviction when he was just nineteen years old. And, with time, he has exemplified the notion that an adolescent's character "is not as well formed as that of an adult," *Roper*, 543 U.S. at 570, and that young people retain a "greater prospect[] for reform," *Miller*, 567 U.S. at 471. As he has matured throughout his period of incarceration, Ferebe has maintained a commendable disciplinary history, accruing just two infractions in over twenty-five years in custody, the last of which occurred nearly fourteen years ago. *See* Mot. for Compassionate Release Ex. 1 at 11, ECF 118-1. All the while, he has pursued self-improvement, completing his GED, various work assignments, and a veritable course catalog of educational and vocational classes. *See id.* at 8-11. He has also taken on roles of grave responsibility within the prison system, serving as an Inmate Companion to his peers on suicide watch and as an Imam for the Muslim Islamic community. Mot. for Compassionate Release at 4, 14. The court gives "great weight" to this extensive history of "self-motivated rehabilitation," which, in the face of a life sentence without the possibility of parole, Ferebe undertook "on his own initiative." *See Gall v. United States*, 552 U.S. 38, 59 (2007).

The court is also satisfied that a thirty-five-year sentence in this case is a just punishment that promotes respect for the law, reflects the seriousness of the offense, deters crime, protects the public, and provides rehabilitative services. As the court has explained, Ferebe committed an offense of the utmost severity, and a correspondingly exacting sentence is warranted to underscore the seriousness of his actions, promote general deterrence, and ensure public safety. A thirty-five-year sentence vindicates these interests and accounts for the extent of Ferebe's violence. There can also be no doubt that thirty-five years is a severe punishment—particularly for crimes committed during adolescence—that courts in this District have agreed conveys, and responds to, the gravity of his offense. Lastly, such a sentence affords appropriate opportunity for rehabilitation, which Ferebe's record indicates he will have amply satisfied.

Finally, the court accounts for the Guideline sentence and the need to avoid unwarranted sentencing disparities among similarly situated defendants. As discussed, Ferebe faces a Guideline sentence of life imprisonment. Such a sentence would, however, represent a gross disparity between Ferebe's sentence and the sentences typically imposed upon other young men convicted of drug-related killings. A thirty-five-year sentence also brings his punishment in line with Haywood Carmichael's, whose sentence the court has reduced to thirty years, and accounts for Ferebe's greater degree of culpability. *See* Mem., *United States v. Carmichael*, CCB-97-0329 (D. Md. Oct. 16, 2023), ECF 201.

All together, then, the § 3553(a) factors favor a sentence modification to thirty-five years.

## CONCLUSION

For the reasons explained above, the severity of Ferebe's sentence, taken in combination with the § 3553(a) factors, warrant a sentence reduction to thirty-five years. The court will accomplish this result by reducing Ferebe's sentence on Count One to thirty years, and leaving in

place his sentence on Count Two of five years, to be served consecutively to Count One. All remaining terms of the original sentence, including the term of supervised release, will remain the same.

 A separate order follows.


 10/16/2023                        /s/
Date                            Catherine C. Blake
                              United States District Judge